GILL (ATTERBURY v.). See Case No. 63S.
GILL (BUCK v.). See Case No. 2,080.

## Case No. 5,425.
GILL et al. v. The CONTINENTAL.
[S West. Jur. (1874) 232.]
District Court, E. D. Missouri.

ADMIRALTY AND MARITIME JURISDICTION — HOME PORT.

The jurisdiction of the courts of the United States conferred by the constitution. is exclusive and does not depend upon state legislation. Supplies and materials furnished in the home port give a maritime lien, and the lien may be enforced in the district court. There is no distinction in the maritime law between supplies furnished in the home or foreign ports.

[This was a libel by Reuben Gill and others against the steamboat Continental for supplies furnished in the home port.]

Since the last change of rule 12 in admiralty, the United States district court for the Eastern district of Wisconsin (Wolf v. The Selt [Case No. 17,927]), and the United States district court for the Southern district of New York (The Circassian [Id. 2,720a]), have expressed their views upon the legal effect of said change, and as to the practice in admiralty thereunder. The proposition now to be considered was not directly involved in those cases, viz.: whether by force of said changed rule and the recent decisions of the United States supreme court concerning the exclusive jurisdiction of admiralty courts, the earlier doctrines of the supreme court as to home supplies and state liens therefor are to be considered as still in operation or to be recognized. It might be of interest to trace the history of judicial action on this class of questions, but this court is so pressed with business that only a brief reference thereto can be made. The early decisions in the case of The Thomas Jefferson [10 Wheat. (23 U. S.) 428], and later decisions of Thomas v. Osborne [19 How. (63 U. S.) 22], and Pratt v. Reid [Id. 359] followed what may be termed the narrow and restricted English rule, instead of the general rules known to maritime powers in admiralty and maritime causes. Without analyzing the several decisions in this country and in continental European courts, and the effect of the 12th rule, it may be stated that the English rule as to the home-port supplies should no longer be held to obtain in United States courts.

As early as 1857, the United States circuit court for this district, in the case of Hill v. The Golden Gate [Case No. 6,491], reviewed the law as then acknowledged and enforced in the United States admiralty courts, and pointed out the supposed jurisdictional and other difficulties springing from a recognition of liens on vessels created by state statutes, and from a refusal to recognize the broader rules known and upheld generally by the maritime world. Since then many changes have occurred, whereby the exclusive jurisdiction of United States courts in admiralty has been asserted and enforced; also the doctrine exploded that the admiralty jurisdiction of those courts rested on, or was restricted by the constitutional grant to congress of the power to regulate commerce among the several states. Now, the true constitutional construction is maintained in full vigor, viz.: that the admiralty and maritime jurisdiction of United States courts rests, not on said grant of power to congress, but on the grant in article 3, concerning the judiciary, viz.: that "the judicial power shall extend to all cases of admiralty and maritime jurisdiction." That grant it has been held, raised ex industria the word "maritime" so as to exclude the narrow and restrictive English doctrines. It is well known that among the most potent causes leading to the formation and adoption of the United States constitution were the restrictions and counter-restrictions on freight and inter-state commerce, which by way of local interests, or for purposes of retaliation, the various states had enacted and were enforcing. Nothing was more essential than that the new government, common to all, should have vested in it full and exclusive authority over all the foreign and inter-state relations of commerce. The reasons for the English rule springing from "Magna Charta," writs of prohibition from the king's bench, etc., had no force under our form of government. Nay, the United States constitution expressly conferred the power for the general good, which the English Magna Charta denied under the reasonable jealousies out of which it sprung. Taking, therefore, the recent decisions of the United States supreme court as a guide, whereby exclusive jurisdiction of admiralty and maritime causes is vested in the United States judiciary, how is it to be maintained that cases not of the description named fall within that clause of the constitution? The jurisdiction of the United States judiciary cannot be enlarged or restricted by state statutes, nor can such a jurisdictional result follow from a mere change of a

rule of practice. The comments of the various courts on the changes of the twelfth rule, wherein these changes are said to be mere changes of practice, do not reach the main point under consideration. If the jurisdiction exists under the constitution, rules of practice for its enforcement may be formed, but if no such jurisdiction is granted, then no rule of practice can give it.

If the United States courts in admiralty can maintain jurisdiction in rem, or in personam over supplies furnished in the home port, its authority so to do cannot rest upon a mere rule of practice, but must be based on the constitutional grant—a grant which cannot be enlarged or diminished by state legislation or modes of practice. When, therefore, the United States supreme court, by the last change made in rule 12, recognized that "in all suits by material men for supplies, or repairs, or other necessaries, the libellant may proceed against the ship and freight in rem or against the master or owner alone in personam," that court must have recognized that the distinction between supplies furnished in the home and in a foreign port was no longer to be observed. Certainly that court did not intend to state. or admit even by implication, that the admiralty grant in the constitution existed or ceased to exist in its entirety. dependent on state legislation. No state and no rule of mere practice in courts could alter or work an amendment of the United States constitution. A recognition that all suits by material men were to be enforced in the same way in United States courts of admiralty, when taken in connection with previous decisions and changes of the twelfth rule, indicates that of necessity the rights of material men should no longer be supposed to rest on state liens or state legislation, but on the true admiralty doctrine, wherein no distinction as to supplies in home or foreign ports is known. If it is necessary to prevent the vessel from laying by the wharf instead of plowing the seas, that supplies should be furnished, the same rules obtain whether they are furnished at home or abroad; that is the supplies must be necessary for the purpose and be furnished upon the credit of the vessel, instead of the personal credit of masters or owners. The Grapeshot. 9 Wall. [76 U. S.] 129. This case in 9th Wallace brought back the rulings which obtained before the cases of Thomas v. Osborne and Pratt v. Reid [supra]. Supplies furnished for voyages on western rivers should stand on the same footing. If a boat is registered or enrolled in the port of St. Louis, and supplies are furnished there or in the state of Missouri, no adequate reason exists for displacing a demand therefor in favor of a claim for supplies on the other side of the river and consequently in the state of Illinois, it may be only a few miles distant from St. Louis. The seeming injustice heretofore existing in such cases is remedied by the enforcement of the true maritime rule. In marshalling the claims proved, therefore, all demands of material-men will be placed in the same class, and the funds applicable thereto be distributed pro rata.